UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WPC III, INC. d/b/a WINTER PARK CONSTRUCTION COMPANY**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **No. 11-2920** |
| **BENETECH, L.L.C., WILLIAM J. BENNETT, WILLIAM AARON BENNETT, JAMES E. BOOK, MARTHA RUSSELL BENNETT, HB ENTERTAINMENT, L.L.C., DEVIL'S PLAYGROUND, L.L.C., AND CARNIVALE PRODUCTIONS, L.L.C.**<br>    Defendants. | **SECTION "E"** |

## ORDER AND REASONS

Before the Court is Plaintiff's Renewed Verified Motion for Writ of Attachment.[1] For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

Plaintiff Winter Park Corporation III ("WPC") filed a Motion for Writ of Attachment on March 30, 2012, while this case was pending in Section F.[2] Judge Feldman denied that motion without prejudice "for failure to comply with LA. C.C.P. art. 3501 and failure to suggest bond amount."[3] On April 17, 2012, after the case was transferred from Section F to Section E, WPC filed a Renewed Verified Motion for Writ of Attachment. As was the case with WPC's first motion,

---

[1] R. Doc. 87.

[2] R. Doc. 82.

[3] R. Doc. 84.

1

defendant Benetech, LLC ("Benetech") opposes the motion.[4] Additionally, Callahan, Inc. ("Callahan") and Western Surety Company ("Western") intervened as defendants in this matter for the purpose of opposing WPC's motion.[5] On April 17, 2012, the Court ordered additional briefing on the issues presented by WPC's Motion on an expedited briefing schedule,[6] and set the matter for status conference on April 24, 2012.[7] WPC, Callahan, Western, Benetech, William J. Bennett, and James Book all filed supplemental briefs in response to the Court's April 17 Order.[8] The Court held a status conference on April 24, 2012 to discuss the Renewed Verified Motion for Writ of Attachment and any other pending motions before the Court.[9] Present at the conference were counsel for all represented parties. The defendants without counsel of record for this matter (William Aaron Bennett, Martha Russell Bennett, HB Entertainment LLC, Devil's Playground LLC, and Carnivale Productions LLC; collectively the "Unrepresented Defendants") were not present at the conference.[10]

---

[4] R. Doc. 90.

[5] *See* R. Docs. 122 and 124, respectively.

[6] R. Doc. 101.

[7] R. Doc. 102.

[8] *See* R. Doc. 109 (WPC); R. Doc.117 (Callahan and Western Surety); and R. Doc. 119 (Benetech, William Bennett, James Book).

[9] *See* R. Doc. 139 (Minute Entry from 4/24/2012 Status Conference).

[10] WPC amended its complaint to add new defendants and claims, including several of the Unrepresented Defendants, on March 26, 2012. R. Doc. 76. All of the Unrepresented Defendants were personally served with WPC's amended complaint. Service of WPC's Renewed Verified Motion for Writ of Attachment was made on them by U.S. Mail, as described in the Certificate of Service attached to WPC's motion. William Aaron Bennett has been a Defendant in this matter from the start, and he was personally served with the initial complaint. The only newly added party who is represented by counsel is James Book. None of the Unrepresented Defendants has made a formal appearance in this case, and Show Cause Orders were recently issued by the Court, requiring WPC to either enter a default against those parties or show cause why its Amended Complaint should not be dismissed for failure to prosecute. R. Doc. 128.

Benetech and WPC are contractors and commercial construction companies. WPC and Benetech entered into a "teaming agreement" to solicit government contracts, and in July 2010, the United States Army Corps of Engineers ("USACE") awarded a contract to Benetech for the storm-proofing of three New Orleans drainage pumping stations pursuant to Solicitation No. OSP06-S-10-0005 (the "OSP-6 Project"). Under the "project specific" agreement (the "OSP-6 Agreement") executed between Benetech and WPC, all payments from USACE to Benetech for the project were required to be deposited into a joint account, and signatures from both Benetech and WPC were required for any distribution of funds from the account.[11] The OSP-6 Agreement called for WPC to act as subcontractor to Benetech on the OSP-6 Project, and tasked WPC with providing general supervision and senior project management.

## ANALYSIS

WPC's Renewed Verified Motion for Writ of Attachment seeks an order from this Court directing that a writ of attachment issue, upon WPC furnishing security as required by law, to seize and attach any property of the defendants within the jurisdiction of this Court sufficient to satisfy WPC's claims, and for the Court to hold such property subject to further order of this Court.

Under the Federal Rules of Civil Procedure, the Court is authorized to look to Louisiana state law for any remedies providing for the seizure of a person or property to secure the satisfaction of

---

[11] This case began with a complaint for injunctive relief and a temporary restraining order filed by WPC. R. Doc. 1. Judge Feldman granted WPC's motion for temporary restraining order, restricting the use and disbursement of OSP-6 Project funds and ordering the return of any funds wrongfully taken from the joint account. R. Doc. 9. The preliminary restraining order has been continued several times since, and is in effect as of the date of this Order. A hearing on WPC's application for preliminary and permanent injunction was set for May 14, 2012, but was continued on the motion of Benetech. By consent of the parties, the temporary restraining order will remain in effect until the hearing. R. Doc. 130.

a potential judgment. Fed. R. Civ. P. 64. The Louisiana state law remedy applicable to the situation at hand is a writ of attachment. A writ of attachment may be obtained in "any action for a money judgment, whether against a resident or a nonresident, regardless of the nature, character, or origin of the claim, whether it is for a certain or uncertain amount, and whether it is liquidated or unliquidated." *See* La. C. Civ. P. 3542. The Louisiana Code of Civil Procedure provides a number of grounds for attachment. One of these grounds is that the defendants "[have] converted or [are] about to convert . . . property into money or evidences of debt, with intent to place it beyond the reach of [their] creditor[s]." *See* La. C. Civ. P. 3541(3).

Louisiana law also provides the burden on a plaintiff moving for the issuance of a writ of attachment: "A writ of attachment . . . shall issue only when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the petition verified by, or by the separate affidavit of, the petitioner, his counsel or agent." La. C. Civ. P. 3501. Once the writ is issued, the "defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued." La. C. Civ. P. 3506; *see also Alessi v. Belanger*, 644 So. 2d 778, 784 (La. App. 1 Cir. 1994) ("Once defendant files a motion to dissolve, the burden is shifted to plaintiff to establish the facts constituting grounds for issuance of the writ").

For WPC to qualify for a writ of attachment under Louisiana law, three elements must clearly appear from specific facts alleged in its verified petition: (1) the nature of WPC's claim, (2) the amount thereof, and (3) the grounds for issuance of the writ. The defendants may challenge these alleged facts by contradictory motion, at which time WPC will be required to prove the grounds upon which the writ issued, but the pleading of the allegations by verified petition is sufficient for

purposes of issuance of the writ of attachment. With respect to the nature of its claim, WPC's First Supplemental and Amended Complaint asserts causes of action alleging that (1) Benetech has breached the OSP 6 Agreement, (2) Aaron Bennett, Bill Bennett and Jim Cook intentionally interfered with the performance of the OSP 6 Agreement, (3) Benetech, Aaron Bennett, Bill Bennett, Martha Bennett, HB Entertainment, Devil's Playground, and Carnivale Productions misappropriated or converted funds belonging to WPC, (4) Jim Book negligently supervised Benetech's performance of the OSP 6 Agreement, and (5) that the defendants have been unjustly enriched through their retention of misappropriated funds. With respect to the amount of the claim, WPC alleges that the amount of its claim is at least $865,838.69 and that all of the defendants are solidarily liable for Benetech's breach of the OSP 6 Agreement and the damages arising out of the misappropriation or conversion.

With respect to the grounds for the issuance of the attachment, WPC claims that the Defendants "[have] converted or [are] about to convert . . . property into money or evidences of debt, with intent to place it beyond the reach of [their] creditor[s]." *See* La. C. Civ. P. 3541(3). In its amended complaint and its motion for writ of attachment, WPC alleges that in October 2011, Benetech placed OSP-6 Project funds in its own operating account that should have gone into the WPC/Benetech joint account.[12] Furthermore, WPC alleges that on the same day those funds were diverted, defendant William Aaron Bennett ("Aaron Bennett"), a former Benetech executive, took approximately $600,000 of those funds out of Benetech's operating account and placed them in his own personal account.[13] WPC further alleges that Aaron Bennett then transferred the entire

---

[12] R. Doc. 76, at ¶¶ 66, 76-82.

[13] R. Doc. 87-1, at 3-7.

$600,000 from his personal account into an account maintained by defendant HB Entertainment, a limited liability company owned by Aaron Bennett's wife, defendant Martha Russell Bennett ("Martha Bennett"), and that $400,000 was then transferred from HB Entertainment to Tell Tale Heart, LLC to fund a film project for Aaron and Martha Bennett's benefit.[14] WPC also alleges that a portion of the $600,000 was used by Martha Bennett to post Aaron Bennett's bond pending a sentencing hearing in Aaron Bennett's federal criminal case.[15]

WPC further alleges that other payments from the USACE for the OSP-6 Project - different funds from those allegedly misappropriated by Aaron Bennett - that should have been paid to subcontractors on the project were instead paid to "Benetech corporate insiders and Bennett-related entities," including defendants Devil's Playground, LLC, Carnivale Productions, LLC, and HB Entertainment.[16] WPC also alleges that the defendants are currently planning to convert more property with the intent to place it beyond the reach of creditors.[17] Finally, WPC alleges that Benetech, Aaron Bennett, and William J. Bennett have violated the Temporary Restraining Order by not returning the funds to the joint account as ordered.[18]

Under La. C. Civ. P. 3541(3), an element of intent is required to establish that the defendants have converted property with the intent to place it beyond the reach of their creditors. The cause of action for misappropriation of funds or conversion alleged in this action is an intentional tort.

---

[14] *Id.*

[15] R. Doc. 76, at ¶¶ 66, 76-82; *see also* R. Doc. 87-1, at 3-7.

[16] R. Doc. 87-1, at 3-7.

[17] *Id.*

[18] R. Doc. 87-1, at 3.

*Dual Drilling Co. v. Mills Equip. Invs.*, 721 So. 2d 853 (La. 1998).  If tortfeasors conspire to commit the intentional or willful tort of conversion, they may be held liable, in solido, under Louisiana law. La. Civ. Code 2324.  The intent of the parties is a question of fact for the Court, and in the context of a debtor attempting to avoid creditors or give certain creditors unfair preference,

> The debtor's attempt to dispose of some or all of his property, especially when he is in failing circumstances . . . may, but does not necessarily, afford sufficient ground to support an attachment. It all depends on the debtor's intent. If the surrounding circumstances, coupled with the acts and doings of the debtor, clearly indicate his intent to defraud, the attachment should be sustained. Otherwise it should be dissolved.

*Teche Elec. Supply, Inc. v. D. W. William, Inc.*, 780 So. 2d 474, 477 (La. App. 3 Cir. 2001).  The Court must look to the allegations of the verified complaint regarding the actions of the parties to determine whether this requirement of La. C. Civ. P. Article 3541(3) has been met.

In this action, the nature of WPC's claim and the amount thereof clearly appear from specific facts alleged in its verified petition.  Furthermore, the grounds upon which WPC is relying for the issuance of the writ of attachment under La. C. Civ. P. Article 3541(3) clearly appear to the Court from the specific facts alleged in the verified petition with respect to defendants Benetech, LLC, William J. Bennett, William Aaron Bennett, James E. Book, Martha Russell Bennett, and HB Entertainment, LLC.  The Court finds that the allegations against these defendants are sufficient to meet the requirement of La. C. Civ. P. Article 3541(3) that the defendants have converted property with the intent to place it beyond the reach of creditors.  Because this conduct is sufficient to support granting of the writ, there is no need for the Court to discuss WPC's allegation that the defendants are about to convert additional property with the intent to place it beyond the reach of creditors.  The grounds upon which WPC is relying for the issuance of the writ with respect to the property of defendants Devil's Playground, LLC and Carnivale Productions, LLC do not clearly appear to the

7

Court from specific facts shown by the verified petition. "Mere conclusory allegations are insufficient to form the basis of the issuance of a writ of attachment." *Bagert v. Goldsmith*, 504 So. 2d 648, 651 (La. App. 4 Cir. 1987); *citing Yorkwood Savings and Loan Ass'n v. Thomas*, 379 So. 2d 798, 799 (La. App. 4 Cir. 1980). The Court finds that the allegations concerning the actions of Carnivale Productions and Devil's Playground are not sufficient to meet the requirements of La. C. Civ. P. Article 3541(3).

WPC's verified motion alleges that the defendants are indebted to WPC for at least $865,838.69. WPC now seeks an Order attaching property of the defendants up to this amount to ensure that such property will be available to satisfy a judgment if WPC ultimately prevails in this action. While WPC's Renewed Verified Motion for Writ of Attachment lists three items of defendants' property as potential items to seize, counsel for WPC advised the Court during a status conference on April 24, 2012 that WPC simply seeks that a writ of attachment issue, upon WPC furnishing security, to seize and attach any property of the defendants within the jurisdiction of this Court sufficient to satisfy WPC's claim.[19] To secure the writ of attachment, WPC must furnish security for payment of damages sustained should it later be determined that the writ was obtained wrongfully, as required by La. C. Civ. P. Article 3544.

Accordingly, **IT IS ORDERED** that Plaintiff's Renewed Verified Motion for Writ of Attachment be and hereby is **GRANTED IN PART**. WPC is entitled to a Writ of Attachment with respect to property within the jurisdiction of this court belonging to defendants Benetech, LLC, William J. Bennett, William Aaron Bennett, James E. Book, Martha Russell Bennett, and HB Entertainment, LLC, up to the amount of $865,838.69, upon WPC's furnishing security in that

---

[19] *See* R. Doc. 139.

amount.  The Court will order the Clerk of Court to issue a writ of attachment to the U.S. Marshal for the Eastern District of Louisiana upon Plaintiff's furnishing security in the amount of $865,838.69.

**IT IS FURTHER ORDERED** that Plaintiff's Renewed Verified Motion for Writ of Attachment is **DENIED IN PART**, insofar as Plaintiff seeks that a Writ of Attachment issue with respect to the property of defendants Devil's Playground LLC and Carnivale Productions LLC.

**Signed, New Orleans, Louisiana, this** 4th **day of May, 2012.**

*Susie Morgan*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**